

**U.S. Department of Justice**

Kenneth L. Wainstein
United States Attorney

*District of Columbia*

---

*Judiciary Center*

*555 Fourth St., N.W.*
*Washington, D.C. 20530*

May 31, 2006

Matthew F. Davies, Esq.
Roberts & Wood
6801 Kenilworth Avenue
Berkshire Building, Suite 202
Riverdale, Maryland 20737

        Re:    <u>United States v. Betram M. Alston</u>
                 Docket No. 06-120 (JR)

Dear Mr. Davies,

     We write to provide discovery in the above-captioned case. Please review this letter and the various materials and information we have provided and call on one of us if you have any questions or concerns about discovery. We will address whatever matters you raise directly. Our practice and preference is to make every effort to resolve discovery issues informally. Although we understand that occasionally issues will arise that will require resolution by the Court, our experience has been that the vast majority of discovery issues can and should be resolved by counsel acting reasonably and in good faith.

     <u>Substantive Statements Incident to Arrest on May 16, 2006.</u> Incident to his arrest on May 16, 2006, Alston was advised of his <u>Miranda</u> rights and declined to waive them. A copy of his <u>Miranda</u> rights card signifying his declination is enclosed. As you will see, Alston indicated through his answers on the card that he had been advised of his <u>Miranda</u> rights and that he understood them. Alston also stated, however, that he did not want to answer any questions and that he was not willing to answer questions without an attorney being present. Accordingly, Alston was not interrogated and made no substantive statements. The <u>Miranda</u> warnings given to Alston, and his decision to invoke those rights, were captured on video tape. A copy of the video tape is enclosed.

     <u>Statements During Booking on May 16, 2006.</u> As is indicated on the P.D. 163 that was prepared incident to his arrest on May 16, 2006, Alston provided some biographical information in response to routine booking questions. He provided a home address of 2508 Muncy Court, Hyattsville, Maryland. He provided a home telephone number of (301) 773-1512. He said that he was born in Washington, D.C. on  He provided a Social Security Number ███████████. He estimated his height at 5'9" and his weight at 165 lbs.

<u>Statements to PSA Representatives on May 17, 2006.</u> Alston was interviewed by Jeremy Schuhmacher, a representative of the Pretrial Services Agency, on May 17, 2006. A report was generated following this interview, a copy of which is enclosed. Alston provided a full name of Bertram Mario Alston and said that he was born on November 24, 1975. He provided a current address of 2508 Muncy Court, Hyattsville, Maryland 20785. He said that he had resided at that address for two years, and that he lived there with his wife. Alston said that he was employed as a maintenance man by the District of Columbia Metro Transit Authority, and that he had been so employed full time for the last four years. He reported that he had a high school diploma. He stated that he was born in the District of Columbia and had lived in the Washington Metropolitan Area for his entire life. He said that he had other relatives living in the area, including his father, uncles, and cousins. He said that he was a United States citizen but did not have a passport. Alston reported previously using illegal substances.

<u>Criminal Record.</u> Bertram Mario Alston ("Black" or "Black Bert")(DOB: 1       SSN:           ; PDID: 453-958) has several prior arrests but only one prior conviction. Alston's prior conviction stems from his arrest with another individual in Mount Rainier, Maryland, on November 23, 1998. A four count indictment subsequently was returned against Alston and a second individual in the Circuit Court for Prince George's County, Maryland, in Case CT982275A. Alston subsequently entered a plea of guilty to Count One of the indictment, in which he was charged with distribution of cocaine. He was sentenced to three years, all of which was suspended but for time served (28 days), and he was placed on supervised probation for two years. Court costs in the amount of $145.00 were assessed. A copy of Alston's prior conviction is enclosed.

<u>Search Warrant on January 21, 2004.</u>  As you know, this prosecution stems from a search warrant that was executed at Alston's home, then 1709 Otis Street, N.E., on January 21, 2004. A copy of the affidavit in support of the warrant, the warrant itself, and the return are enclosed. Also enclosed is a seizure list, which itemizes seven separate items that were seized, the location where each item was found, and the name of the officer who found each item.

<u>Diagram of Primary Area Searched.</u> Coincident with the execution of the search warrant, a diagram of the basement area, where Alston stayed and most of the items that were seized were located, was prepared. A copy of that one page diagram is enclosed.

<u>Video of Search.</u>  A video tape was made of the search at 1709 Otis Street, N.E., on January 21, 2004. A copy of the video tape is enclosed.

<u>Photographs during Search.</u>  Twenty-two color photographs were taken at the time of the search. For your convenience, we have had all of these photographs scanned and loaded onto a compact disc, which has been duplicated and enclosed with this letter.

<u>Paper Matter Seized during Search.</u>  From the seizure list that was prepared when the search warrant was executed, a copy of which is enclosed, you will note that certain paperwork

and photographs were among the items recovered by the officers involved in the search. Specifically, Item #5 is noted on the seizure list as personal papers and mail matter. Item #6 is noted as a Citibank check book, and Item #7 is noted as a picture. For your convenience, we have made and enclosed photocopies if all of this evidence.

For record purposes, Item #5, personal papers and mail matter in the name of Bertram Alston, consists of the following individual pieces of evidence:

- \*  a bill from GEICO Direct, postmarked December 19, 2003, to Bertram M. Alston of 1709 Otis Street, N.E. (four pages);

- \*  a bill from Sprint PCS, dated December 17, 2003, to Bertram M. Alston of 1709 Otis Street, N.E. (fifteen pages);

- \*  Official Notice of Proposed Suspension from D.C. Bureau of Motor Vehicles to Bertram M. Alston of 1709 Otis Street, N.E., with "ticket detail" (two pages);

- \*  five Notices of a Scheduled Hearing from the Department of Motor Vehicles Adjudication Services to Bertram M. Alston of 1709 Otis Street, N.E. (five pages).

Item #6 consists of a Citibank checkbook with checks in name of Bertram M. Alston of 1709 Otis Street, N.E. We have enclosed a copy of one of the checks (No. 197). We also enclose a copy of the exterior of the checkbook, which has a label bearing the name Desiree Crumlin and an address of 1502 Adams Street, N.E. Item #7 is a picture of six males and one female, apparently taken at a go-go or nightclub.

<u>Recovery of Two .50 Caliber Shell Casings and Power Supply Box.</u>  As indicated in the affidavit in support of the search warrant that is at the core of this case, a confidential source was with Alston and group of other individuals on December 31, 2003, New Year's Eve, when Alston – using the Desert Eagle .50 caliber pistol (Serial No. MR008266) seized during the search on January 21, 2004 – fired at a power box mounted on a telephone pole in front of 2027 Newton Street, N.E. As the warrant affidavit also indicates, on January 12, 2004, the affiant and another officer responded to the scene and recovered two .50 caliber spent shell casings and saw holes in the power box mounted on the telephone pole.

On Tuesday, December 21, 2004, an Evidence Technician from the Metropolitan Police Department responded and took ten photographs of the damaged power box. From inside the power box the Technician recovered two silver metal fragments and two batteries that appeared to have been damaged by gunfire. On December 28, 2004, one of the batteries was opened and a bullet was recovered. Color copies of the aforementioned ten photographs are enclosed. Also enclosed are copies of the police reports pertaining to this work. For record purposes, three reports are enclosed. One is dated December 21, 2004, and was prepared by Technician Tira

Gibson.  The second and third reports were both prepared by Technician Grant Greenwalt on December 28, 2004.  One pertains to work done by Technician Greenwalt on December 22, 2004, and the other to work done on December 28, 2004.

      Demonstrative Evidence.  For use at trial we expect to prepare a formal diagram or photomap of the 1700 block of Otis Street, N.E., where Alston lived at the time of the search, and perhaps also a diagram or photomap of the larger Taft Terrace neighborhood.  We also may prepare and use a few aerial photographs.  Should we in fact prepare such exhibits we will disclose them to you before trial.

      Other Crimes Evidence.  We possess evidence of other crimes committed by Alston.  We will divide our discussion of those crimes by topic.  Even though we do not regard such evidence as evidence of "other crimes," we will include in this discussion proof we possess that Alston possessed the Desert Eagle .50 caliber pistol (Serial No. MR008266) on dates other than January 21, 2004, when it was recovered by the police.

> Prior Possession of the Desert Eagle .50 caliber pistol (Serial No. MR008266).  At trial we expect to call numerous witnesses who know Alston well and, more particularly, know from personal observations that he possessed the Desert Eagle .50 caliber pistol seized from the basement of 1709 Otis Street, N.E., on January 21, 2004.  Each of these witnesses, on several occasions other than January 21, 2004, saw Alston in possession of the Desert Eagle .50 caliber pistol.  We do not consider Alston's possession of the Desert Eagle .50 caliber pistol on prior occasions as proof of "other crimes."  Rather, it amounts to proof of the crime in question.  See United States v. Cassell, 292 F.3d 788, 791 (D.C. Cir. 2002) (evidence of defendant's prior gun possessions admissible under Rule 404(b) "because it was relevant to show knowledge of, and intent to possess, the firearms recovered from his room"); United States v. Toms, 136 F.3d 176, 183-84 & nn. 11-12 (D.C. Cir. 1998) (in constructive possession case, evidence of prior drug activities and firearm possession was admissible to show intent, motive, knowledge, and/or absence of mistake with respect to the instant firearm); United States v. Brown, 16 F.3d 423, 431 (D.C. Cir.) (evidence of the defendant's possession of a gun at the time of arrest was relevant to show his intent, knowledge or absence of mistake with respect to the firearms found in a safe during a search three months earlier), cert. denied, 513 U.S. 900 (1994). See also United States v. Mills, 29 F.3d 545, 548-49 (10th Cir. 1994) (in Section 922(g)(1) prosecution, evidence of earlier possession of firearms properly admitted under Rule 404(b) as proof of knowing possession); United States v. Brown, 961 F.2d 1039, 1042 (2d Cir. 1992) (in prosecution for possession of unregistered machine gun, evidence of defendant's simultaneous and subsequent possession of handguns properly admitted under Rule 404(b) as proof of defendant's knowledge and absence of mistake or accident); United States v. Gomez, 927 F.2d 1530, 1553-54 (11th Cir. 1991) (in trial involving carrying a firearm in connection with a drug trafficking offense, evidence of prior gun possession properly admitted under Rule 404(b) to prove, *inter alia*, absence of "accident or coincidence"); United States v. Williams, 895 F.2d 1202, 1204-06 (8th Cir.

1990) (in trial for carrying a firearm in connection with a drug trafficking crime, evidence of prior gun possession obtained from the execution of search warrants was properly admitted over Rule 403 objection because prior possession was probative of knowledge and absence of mistake); United States v. Teague, 737 F.2d 378, 379-81 (4th Cir. 1984) (in prosecution of a felon for possession of a gun, evidence of his subsequent offer to sell a gun was admissible under Rule 404(b) as evidence of intent, knowledge, and absence of mistake in his possession of the gun). We regard this well-settled body of case law as compelling, but we appreciate that you may have your own and different views on the subject. If so, you are on notice now of the evidence we possess and expect to offer at trial.

Discharge of Desert Eagle .50 caliber pistol/Destruction of Property on December 31, 2003. As we have noted, we possess evidence that Alston used the Desert Eagle .50 caliber pistol to shoot at a power box mounted on a telephone pole in the 2000 block of Newton Street, N.E., on December 31, 2003, just twenty-one days before the search that resulted in the recovery of the pistol. Several witnesses who saw Alston do this shooting are available to the government, and two .50 caliber shell casings found at the scene have been determined to have been fired in the Desert Eagle .50 caliber pistol. The power box mounted on the telephone pole sustained approximately $2800.00 in damage according to a representative of Star Power Internet Supply Company. We regard Alston's possession of the pistol on December 31, 2003, as probative of his possession of the pistol on January 21, 2004, and hence we expect to offer proof of that prior possession at trial. Furthermore, be advised that although as yet we have not sought an indictment against Alston stemming from this incident, we would expect to seek such an indictment if Alston elects to proceed to trial rather than to try to resolve this case through a truthful debriefing and guilty plea.

Drug Trafficking. We possess abundant evidence that Alston, for a number of years, was engaged in drug trafficking in the vicinity of his home, throughout several parts of the Taft Terrace neighborhood in upper Northeast, Washington, D.C., and in parts of nearby Mount Rainier, Maryland. We have available numerous witnesses who know Alston very well and could testify, from firsthand observations and experience, that he was engaged in drug trafficking, and specifically that he was engaged in dealing crack cocaine. We provide you with notice of this evidence so that you may take whatever steps you deem appropriate to deal with it.

Shooting in February of 2002 and Violent Crime Conspiracy. We possess proof of two shootings by Alston that did not result in either an arrest or a conviction. One of these occurred in February of 2002. On February 13, 2002, in the area of the 1800 block of Otis Street, N.E., James Theodore Jordan, known as "Teddy," a well-liked figure in the Taft Terrace neighborhood, was stabbed. A few days later, in retaliation, and using the Desert Eagle .50 caliber pistol recovered during the search of his room on January 21, 2004, Alston shot at two individuals who were at a bus stop in the area of 22nd and

Newton Streets, N.E. Alston did not hit either individual, but the shooting escalated tensions in the Taft neighborhood and resulted in another shooting on February 27, 2002. In the aftermath of the shooting on February 27, 2002, a violent crime conspiracy of which Alston was a part was formed.

Shooting in 1800 Block of Otis Street, N.E. A second shooting by Alston damaged a car in the 1800 block of Otis Street, N.E. We have not yet fixed the precise date that this shooting occurred, but witnesses who were present would testify that Alston used the Desert Eagle .50 caliber pistol to cause the damage.

Destruction of Property on July 8, 1998. On July 8, 1998, Alston and another individual were arrested and charged with felony destruction of property. These arrests followed an incident in which Alston went onto the lot in rear of 5th District Police Station and slashed all four tires of an unmarked D.C. police car. The case was broken down during intake at Superior Court and Alston and the second individual were charged with misdemeanor destruction of property and unlawful entry. The case against Alston (Crim. No. M-9831-98) was dismissed when the government as not ready for trial on September 17, 1998. We provide notice to you about this crime because we possess strong evidence that Alston in fact committed it.

Other Arrests. We also provide notice about three other arrests Alston had in Prince George's County that did not result in convictions. In 1998, in Case No. CT982033B, he was charged with possession with intent to distribute cocaine. The case was later nolle'd. In 1997, in Case No. CR4E00071565, he was charged with destruction of property valued at more than $500.00. The case was later nolle'd. In 1996, in Case No. CRE0046409, he was charged with theft under $300. The case was later nolle'd.

Expert Witness – Luciano Morales. The firearms evidence in this case – consisting of the two shell casings recovered by Investigators Abdalla and Schmidt in the 2000 block of Newton Street, N.E., on January 12, 2004, the Desert Eagle .50 caliber pistol recovered during the search of Alston's room on January 21, 2004, and the bullet fragments recovered from the Star Power box and battery in December of 2004 – was examined by Luciano Morales, a Firearms and Toolmark Examiner with the Metropolitan Police Department. Morales found that the Desert Eagle .50 caliber pistol operated normally. He found that the two cartridge cases found by Investigators Abdalla and Schmidt in the 2000 block of Newton Street, N.E., on January 12, 2004, were .50 caliber cartridge cases that were fired in the Desert Eagle .50 caliber pistol recovered during the search of Alston's room on January 21, 2004. He found that the copper bullet jacket fragments removed from the battery in the power box were too mutilated to allow for further identification. Copies of two reports by Morales, each two pages, are enclosed.

Represented Parties. As a courtesy, and as a cautionary note, we provide you with notice that two witnesses are represented parties in this matter, and accordingly that interviews of these witnesses about the case outside the presence of their counsel could raise serious ethical

questions. Bernard Alston, Bertram Alston's father, is represented by Jon W. Norris, Esq., 641 Indiana Avenue, N.W., 2nd Floor, Washington, D.C. 20004 ((202) 842-2695 (o); (202) 369-4109 (cell); (202) 842-2627 (fax); E-mail: Jonnorrislaw@gmail.com). In addition, Desiree Crumlin, reportedly now Bertram Alston's wife, is represented by Jenifer Wicks, Esq., 503 D Street, N.W., Suite 250A, Washington, D.C. 20001 ((202) 326-7100 (o); (202) 478-0867 (fax); E-mail: Jwickslaw@aol.com).

Brady Information. With regard to the charged possession of the Desert Eagle .50 caliber pistol on January 21, 2004, we possess no information that is material and favorable to Alston or that in some way tends to exculpate him. We construe the government's obligations to disclose such information broadly, and thus you may be assured that we will supplement this response promptly should we discover any information that either is material or favorable to Alston or that somehow tends to exculpate him. Pertinent information about government witnesses not elsewhere discussed in this letter – e.g., criminal convictions or pending criminal cases, pure impeachment material, drug or alcohol use, etc. – will be provided to you at trial.

Giglio Information. The government may call as witnesses certain individuals who have entered guilty pleas and agreed, as part of their pleas, to cooperate with the government by providing truthful testimony. Copies of the plea agreements underlying such guilty pleas will be provided to you at trial.

Jencks Material. Notwithstanding the requirements of the statute, our practice is to disclose Jencks material in advance of trial if doing so does not pose risk to any government witness or harm to the government's case. We will make that decision in this case at a later date.

Reverse Discovery. Please note a reverse discovery request for all information and materials subject to production pursuant to Rule 16(b)(1)(A),(B) and (C). So that there may be no misunderstanding on this point, we specifically request an opportunity to inspect and copy or photograph all documents, photographs, and tangible objects which White intends to introduce as evidence in chief at trial. Similarly, we request copies of any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case which you intend to introduce at trial or which were prepared by a witness whom you intend to call at trial. Finally, we request a written summary of any expert testimony you intend to use as evidence at trial, such summary to include the opinions of the experts, the bases and reasons therefor, and the experts' qualifications.

Reverse Jencks. As you know, the provisions of Rule 26.2 apply to the defense as well as to the government. So that there will be no issue at a later date, however, we ask you now to be on notice of our request for all prior statements by any person who will be a witness for Alston at any suppression hearing or at trial.

Plea Offer. We are willing to consider extending a plea offer to Alston, but not unless he agrees to be debriefed and is fully truthful and forthright in that debriefing. Accordingly, we ask

you to confer with your client and see if he is willing to submit to a debriefing on or before June 19, 2006. If Alston does not submit to a debriefing by that date, and is not fully truthful in that debriefing, we will not extend a plea offer to him and may proceed to a superseding indictment.

        Sincerely,

        KENNETH L. WAINSTEIN
        UNITED STATES ATTORNEY

By: _____
     MICHAEL D. BRITTIN
     RACHEL CARLSON LIEBER
     Assistant United States Attorneys
     (202) 307-0106 (MDB)
     (202) 353-8055 (RCL)

Enclosures